JILL P. TELFER, State Bar No. 145450
LAW OFFICES OF JILL P. TELFER
A Professional Corporation
331 J. Street, Suite 200
Sacramento, California  95814
Telephone:   (916) 446-1916
Facsimile:    (916) 446-1726

Attorneys for Plaintiff
**JOHN DUCRAY**

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JOHN DUCRAY**<br><br>         Plaintiff,<br><br>    v.<br><br>**ROMAN CATHOLIC DIOCESE OF SACRAMENTO, ST. FRANCIS HIGH SCHOOL, LINCOLN SNYDER, MARGO BROWN, MARK MCGREEVY and DOES 1 through 20, inclusive.**<br><br>         Defendants. | CASE NO:<br><br>**COMPLAINT FOR DAMAGES DUE TO EMPLOYMENT DISCRIMINATION; RETALIATION AND DEFAMATION**<br><br>[42 U.S.C. §2000; 29 U.S.C. § 621 and Cal. Civ. Code §45]<br><br>**\*\*Jury Trial Requested\*\*** |

COMES NOW Plaintiff, **JOHN DUCRAY**, and alleges as follows:

**JURISDICTION AND VENUE**

1.  This action is for damages and equitable relief and is brought pursuant to 42 U.S.C. 2000 et seq and California Civil Code §45 et seq.  Jurisdiction of the pendent claim is based on 28 U.S.C. §1441. Individual Defendants Lincoln Snyder ("Snyder"), Margo Brown, ("Brown"), and Mark McGreevy ("McGreevy") all reside in the Eastern District.

2.  Venue of this action in this Court is proper since the actions, as alleged, all occurred in the Eastern District.

**PARTIES**

3.  Plaintiff John DuCray ("DuCray") is a male who was employed by Defendant St. Francis High School ("SFHS") as the Head Coach for the Track & Field and Cross Country teams for

approximately thirty seven (37) years at the time of his unlawful termination on or about February 6, 2016. DuCray was 63 years old at the time of his termination.  He has received designations and commendations for his work throughout his career at SFHS.  At all times during Plaintiff's employment with Defendant, Plaintiff's performance was excellent.  Plaintiff is a resident of the Eastern District.

4.  Defendant Roman Catholic Diocese of Sacramento ("Diocese") is doing business in Sacramento, California in part as Defendant SFHS and is an employer of over 25 persons.

5.  DuCray worked as the Head Track and Field coach for approximately thirty seven (37) years at the time of his termination on or about February 6, 2016.  As the Head Coach for the Track & Field and Cross Country teams, DuCray had one of the largest Cross County and Track teams in the section.  In addition, under DuCray, the SFHS Track and Field team was named 7-Time Sac-Joaquin Section Champions (2002, 2003, 2004, 2010, 2013, 2014, and 2015), and 18-Time league Champions (1987, 1994, 1995, 1996, 1997, 1998, 2000, 2002, 2003, 2005, 2006, 2009, 2010, 2011, 2012, 2013, 2014, 2015).  In 2002, St. Francis won the Division 3 state championship in cross country and has four overall top-five finishes under DuCray. The team also garnered a fourth-place finish in 2011, and fifth place in 1999. Overall, the team has made 16 state meet appearances.  DuCray has led the program to 24 league and nine section team titles in cross country and 13 league and three section championships in track and field.  DuCray has coached cross country, track and field, football, baseball and basketball. He was also the varsity basketball coach at St. Francis from 1980-84. He started the track and field program in 1977 and coached it from 1977-78, 1980-99 and 2005-2015, while he has directed the cross country program since its inception in 1982.

6.  Throughout his tenure, DuCray received consistently excellent performance evaluations and commendations from parents, staff, and students.  In these evaluations it is identified that Ducray exhibited respect for all members of the school community, worked well with teenagers, parents and staff, was professional in his dealings and responsibilities and handled disappointments in a tactful way. The evaluations consistently stated DuCray had excellent communications with coaches, students, teachers, and administrators, and exhibited a respectful and professional attitude.

7.  The evaluations also identified DuCray had the ability to troubleshoot, was diligent in making the administration aware of challenges and focuses within his department, and provided personal

insight on matters and situations in a professional manner. DuCray is a well-respected coach throughout the SFHS community, including staff, parents, and students. DuCray is described as innovative, and was a hard worker, an asset to the community, extraordinarily caring and passionate about SFHS, and has a strong desire for fairness and honesty in his decisions.

8. In 2012, SFHS President Brown replaced former SFHS Athletic Director Koleen McNamee ("McNamee") with Mark McGreevy.

9. DuCray previously had been a witness in the gender discrimination complaint of McNamee (*McNamee v. Saint Francis High School, et al.*, U.S. District Court, Eastern District of California, Case No.: 2:12-cv-03101-MCE-AC). McNamee listed Ducray as a witness in her initial disclosure filed with the Court on March 25, 2013 and again on December 13, 2013. SFHS did not list Ducray as a witness in the case.

10. Following DuCray's involvement in the McNamee case, adverse acts were taken against DuCray in an attempt to force him out of his job.

11. On January 29, 2015, DuCray received a letter from McGreevy alleging that DuCray used abusive language designated to humiliate and demean the students as means of motivational control; submitting four SFHS student-athletes associated with the 4x100 and 4x400 relay teams to an overly aggressive workout; and, holding a practice that was in violation of CIF Sac-Joaquin Bylaw 504.8 concerning "Dead Periods" (prohibiting a coach to have contact with student-athletes while using "equipment for their given sport" – stop-watch to time runs. The dead period was from January 20, 2015-February 9, 2015). As a result, DuCray was immediately removed from his position as Head Coach and reassigned as Assistant Coach to work with athletes in the distance events. Prior to this, DuCray had never been subjected to adverse actions by the Defendant.

12. In March 2015, DuCray was told by McGreevy that there were two more complaints against DuCray alleging misconduct. At that time, DuCray, was ordered by SFHS to take a sabbatical from coaching for the remainder of the 2014-2015 coaching season because. Ducray followed Defendant's orders because he wanted to remain a respected and valued employee and hoped Defendants would cease the adverse actions upon his return.

13. In July 2015, SFHS forced DuCray into an Independent Contractor Agreement with SFHS.

14. Thereafter, On October 13, 2015, DuCray was suspended by McGreevy with no explanation or due process provided. In addition, Defendants attempted to discredit DuCray to the employees, students, parents and priests, to cover up their discrimination and retaliation.

15. On October 21, 2015, Anna Schiele, Human Resources Manager for Defendant Roman Catholic Diocese of Sacramento ("Diocese") allegedly conducted an investigation into the allegations made against DuCray.

16. On or about November 29, 2015, DuCray and his wife met with Ms. Schiele to discuss the allegations.  DuCray was informed that the allegations against him included yelling at student-athletes in an unconstructive and abrasive manner; contacting a student-athlete's physical therapist without parental consent; and creating a culture of fear among some student athletes. At that time, DuCray informed Ms. Schiele that he had never been informed of a single incident in 2015 of any of these allegations or alleged compalints. DuCray also informed Ms. Schiele that he never leaked student-athlete's medical information, but rather another coach (Randall Fairchild) was the one who contacted the student-athlete's physical therapist, and who eventually replaced DuCray as Head Coach.

17. On January 29, 2016, Defendant Diocese claimed it completed its investigation concerning the allegations against DuCray. On February 16, 2016, DuCray received a letter from SFHS advising him of the alleged findings of the investigation and terminating his employment, effective immediately.

18. Plaintiff is informed and believes, and thereby alleges that each of the defendants herein was at all times relevant hereto the agent, employee or representative and/or joint venturer of the remaining defendants, and was acting at least in part within the course and scope of such relationship. Plaintiff is further informed and believes, and thereon alleges, that each of the defendants herein gave consent to, ratified, and authorized the acts alleged herein to each of the remaining defendants.

19. Plaintiff alleges on information and belief that, at all times relevant herein, defendants, and each of them, have actively participated in the retaliation of, and/or discrimination against Plaintiff because of his age and tenure at SFHS, and/or have failed to intervene or otherwise prevent said harassment, discrimination and retaliation despite their knowledge of the illegal activity.

///

20. All of the described conduct, acts, and failures to act are attributed to agents and employees under the direction and control, and with the permission, consent and authorization of the remaining Defendants. Said acts, conduct and failures to act are within the scope of such agency and/or employment.

21. Plaintiff filed a Complaint with the Equal Employment Opportunity Commission and received a right to sue on May 31, 2016.

**FIRST CLAIM FOR RELIEF**
**Retaliation**
**(42 U.S.C. 2000e)**
**(Against SFHS and Diocese Only)**

22. The allegations in paragraph 1 through 21, are incorporated herein by reference.

23. Beginning in approximately January 2015 Plaintiff began complaining that he was being treated unfairly because of his age. DuCray made these complaints both verbally and in writing to the SFHS administration, and the Diocese before Defendants ultimately terminated him.

24. In response to these internal complaints and because DuCray witnessed the gender discrimination and retaliation against McNamee and was listed by McNamee as a witness in the lawsuit, Defendants' retaliated against DuCray with pretextural discipline, set him up to fail, ostracized him, defamed him and ultimately terminated him.

25. As a proximate result of Defendants' retaliation against Plaintiff, Plaintiff has suffered and continues to suffer substantial losses in earnings, both past and future, and has and continues to suffer embarrassment, humiliation and mental anguish all to his damage in an amount according to proof.

26. As a direct and proximate result of the conduct of Defendants and each of them, Plaintiff has incurred and will incur special damages, including but not necessarily limited to lost wages and salary, lost stock options and bonuses, lost benefits, lost future earnings and benefits, medical costs and expenses all in an amount to be determined according to proof at trial.

27. As a further, direct and proximate result of the conduct of Defendants, and each of them, Plaintiff has suffered and will continue to suffer general damages, including severe emotional distress. Plaintiff sustained great emotional disturbance, shock and injury to his nervous system, all of which

caused and continues to cause Plaintiff severe physical and emotional injury, without limitation in an amount to be determined according to proof at trial.

28.   As a result of Defendants' discriminatory conduct as alleged herein, Plaintiff has no plain, adequate or complete remedy at law, and Defendant continues to engage in said wrongful conduct. Therefore, Plaintiff requests that Defendant, including its agents and employees and those acting in concert with them be permanently enjoined from engaging in this alleged wrongful practices set forth herein and for Plaintiff to be reinstated.

**SECOND CLAIM FOR RELIEF**
**Defamation**
**(Cal. Civ. Code §45, et seq.)**
**(Against All Defendants)**

29.   Plaintiff complains against Defendants, and DOES 1 through 28, inclusive, and realleges all the allegations contained in the complaint, and incorporates them by reference into this cause of action as though fully set forth herein.

30.   Plaintiff is informed and believes the Defendants, and each of them, by the herein-described acts, conspired to, and in fact, did negligently, recklessly, and intentionally cause excessive and unsolicited internal and external publications of defamation, of and concerning Plaintiff, to third persons and to the community in violation of Civil Code section 45, et seq.  These false and defamatory statements included express and implied statements.

31.   DuCray was defamed by employees, supervisors and managing agents of SFHS. The defamation began in approximately January 2015 and continues up until the present. The defamatory statements were initiated by McGreevy and Brown as a means to instigate DuCray's termination and undermine his credibility.

32.   In a letter titled "Coaching Misconduct" dated January 29, 2015, McGreevy stated on Tuesday January 20, 2015 Plaintiff engaged in the following conduct:

•   Holding a practice that was in violation of CIF Sac Joaquin Bylaw 504.8 concerning "Dead Periods."

•   Submitting four St. Francis student-athletes associated with the 4x100 and 4x400 relay teams to an overly aggressive workout without sufficient preseason conditioning and/or warmup.

- Using abusive language designed to humiliate and demean the students as means of motivational control. This inappropriate communication reportedly continued and even escalated when one of your subjects suffered physical injury.

33. In a letter dated February 16, 2016 from Snyder, Executive Director of Catholic Schools and President Brown, St. Francis Catholic High School regarding Plaintiff stated:

- You yelled at student athletes in an unconstructive and abrasive matter.
- You contacted a student-athlete's physical therapist without parental consent.
- You created a culture of fear among some student athletes, including fear of reporting injuries and requesting time off from competitions.
- You failed to establish clear procedures for assistant and volunteer coaches to communicate with you regarding issues that arise with student athletes.
- You failed to collaborate with assistant coaches, trainers, wellness counselors, and the School administration
- You failed to establish healthy boundaries around the relationships formed with student-athletes and their families during the course of your coaching.
- You took adverse action against two student-athletes after a relative of one of the student-athletes was the subject of a complaint against you.
- You have engaged in a pattern of unacceptable behavior
- Repeated acts of insubordination

34. During the above-described time-frame, the Defendants, and each of them, conspired to, and in fact, did negligently, recklessly, and intentionally cause excessive and unsolicited publication of defamation, of and concerning Plaintiff, to third persons, who had no need or desire to know. Those third person(s) to whom these Defendants published this defamation are believed to include, but are not limited to, other agents and employees of Defendants, and each of them, and the community, all of whom are known to Defendants, and each of them, but unknown at this time to Plaintiff.

35. The defamatory publications consisted of oral and written, knowingly false and unprivileged communications, tending directly to injure Plaintiff and Plaintiff's personal, business, and professional reputation. These publications included the following false and defamatory statements (in

1  violation of Civil Code §§ 45 and 46(3)(5)) with the meaning and/or substance that Plaintiff: was a bully,
2  confrontational and disrespectful.

3  36. Plaintiff is informed, believes and fears that these false and defamatory per se statements
4  will continue to be published by the Defendants, and each of them, and will be foreseeably republished
5  by their recipients, all to the ongoing harm and injury to Plaintiff's business, professional, and personal
6  reputations. Plaintiff also seeks redress in this action for all foreseeable republications, including his
7  own compelled self-publication of these defamatory statements.

8  37. The defamatory meaning of all of the above-described false and defamatory statements
9  and their reference to Plaintiff, were understood by these above-referenced third person recipients and
10 other members of the community who are known to Defendants, and each of them, but unknown to
11 Plaintiff at this time.

12 38. None of Defendant's defamatory publications against Plaintiff referenced above are true.

13 39. The above defamatory statements were understood as assertions of fact, and not as
14 opinion. Plaintiff is informed and believes this defamation will continue to be negligently, recklessly,
15 and intentionally published and foreseeably republished by Defendants, and each of them, and
16 foreseeably republished by recipients of Defendants' publications, thereby causing additional injury and
17 damages for which Plaintiff seeks redress by this action.

18 40. Each of these false defamatory per se publications (as set forth above) were negligently,
19 recklessly, and intentionally published in a manner equaling malice and abuse of any alleged conditional
20 privilege (which Plaintiff denies existed), since the publications, and each of them, were made with
21 hatred, ill will, and an intent to vex, harass, annoy, and injure Plaintiff in order to justify the illegal and
22 cruel actions of the Defendants, and each of them, to cause further damage to Plaintiff's professional and
23 personal reputation, to cause him to be fired, to justify his firing, and to retaliate against Plaintiff for
24 prior ill will, rivalry, and disputes in retaliation for his objections to improper and illegal conduct by the
25 Defendants.

26 41. Each of these publications by the Defendants, and each of them, were made with
27 knowledge that no unbiased investigation supported the unsubstantiated and obviously false statements.
28 The Defendants, published these statements knowing them to be false, unsubstantiated by any reasonable

investigation and the product of hostile witnesses. These acts of publication were known by Defendants, and each of them, to be negligent to such a degree as to be reckless. In fact, not only did Defendants, and each of them, have no reasonable basis to believe these statements, but they also had no belief in the truth of these statements, and in fact knew the statements to be false. Defendants, and each of them, excessively, negligently, and recklessly published these statements to individuals with no need to know, and who made no inquiry, and who had a mere general or idle curiosity of this information.

42. The above complained-of publications by the Defendants, and each of them, were made with hatred and ill will towards Plaintiff and the design and intent to injure Plaintiff, Plaintiff's good name, his reputation, employment and employability. Defendants, and each of them, published these statements, not with an intent to protect any interest intended to be protected by any privilege, but with negligence, recklessness and/or an intent to injure Plaintiff and destroy his reputation. Therefore, no privilege existed to protect any of the Defendants from liability for any of these aforementioned publications or republications.

43. As a proximate result of the publication and republication of these defamatory statements by the Defendants, and each of them, Plaintiff has suffered injury to his personal, business and professional reputation including suffering embarrassment, humiliation, severe emotional distress, shunning, anguish, fear, loss of employment, and employability, and significant economic loss in the form of lost wages and future earnings, all to Plaintiff's economic, emotional, and general damage in an amount according to proof.

44. The Defendants, and each of them, committed the acts alleged herein recklessly, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, for an improper and evil motive amounting to malice (as described above), and which abused and/or prevented the existence of any conditional privilege, which in fact did not exist, and with a reckless and conscious disregard of Plaintiff's rights. All actions of the individual Defendants, and each of them, their agents, herein alleged were known, ratified and approved by the individual Defendants, and each of them. Plaintiff thus is entitled to recover punitive and exemplary damages from the individual Defendants, and each of them, for these wanton, obnoxious, and despicable acts in an amount based on the wealth and ability to pay according to proof at time of trial.

COMPLAINT FOR DAMAGES
Page 9

**THIRD CLAIM FOR RELIEF**
Association Discrimination
(42 U.S.C. 2000e)
(Against SFHS and Diocese Only)

45. The allegations in paragraph 1 through 44, are incorporated herein by reference.

46. DuCray worked well with McNamee when she was the Athletic Director and had a good working relationship with SFHS and the Diocese until McNamee's discriminatory and retaliatory termination on or about August 3, 3012. Once McNamee listed DuCray as a witness in her federal lawsuit against SFHS and the Diocese, DuCray began to be retaliated against. SFHS and the Diocese knew that Plaintiff would be a friendly witness for McNamee.

47. The retaliation included but was not limited to pretextural discipline, being set up to fail, being ostracized, defamed and ultimately terminated.

48. As a proximate result of Defendants' retaliation against Plaintiff, Plaintiff has suffered and continues to suffer substantial losses in earnings, both past and future, and has and continues to suffer embarrassment, humiliation and mental anguish all to his damage in an amount according to proof.

49. As a direct and proximate result of the conduct of Defendants and each of them, Plaintiff has incurred and will incur special damages, including but not necessarily limited to lost wages and salary, lost stock options and bonuses, lost benefits, lost future earnings and benefits, medical costs and expenses all in an amount to be determined according to proof at trial.

50. As a further, direct and proximate result of the conduct of Defendants, and each of them, Plaintiff has suffered and will continue to suffer general damages, including severe emotional distress. Plaintiff sustained great emotional disturbance, shock and injury to his nervous system, all of which caused and continues to cause Plaintiff severe physical and emotional injury, without limitation in an amount to be determined according to proof at trial.

51. As a result of Defendants' discriminatory conduct as alleged herein, Plaintiff has no plain, adequate or complete remedy at law, and Defendant continues to engage in said wrongful conduct. Therefore, Plaintiff requests that Defendant, including its agents and employees and those acting in

///

concert with them be permanently enjoined from engaging in this alleged wrongful practices set forth herein and for Plaintiff to be reinstated.

**FOURTH CLAIM FOR RELIEF**
**Age Discrimination**
**(29 U.S.C. § 621)**
**(Against SFHS and Diocese Only)**

52.     The allegations in paragraph 1 through 51, are incorporated herein by reference.

53.     Defendants took adverse actions against Plaintiff which affected the terms and conditions of employment because of DuCray's age.  Such acts include setting Plaintiff up to fail, suspending him, conducting a biased investigation, prextextural discipline and ultimately termination. Plaintiff was 64 years of age at the time of his termination. He was replaced by a younger, less qualified employee. During the investigation of Plaintiff, he was asked if he considered himself an "Old-School" coach. SFHS and the Diocese took these adverse acts against Plaintiff because of his age.

54.     As a proximate result of Defendants' discrimination, Plaintiff has suffered and continues to suffer substantial losses in earnings, both past and future, and has and continues to suffer embarrassment, humiliation and mental anguish all to his damage in an amount according to proof.

55.     As a direct and proximate result of the conduct of Defendants and each of them, Plaintiff has incurred and will incur special damages, including but not necessarily limited to lost wages and salary, lost stock options and bonuses, lost benefits, lost future earnings and benefits, medical costs and expenses all in an amount to be determined according to proof at trial.

56.     As a further, direct and proximate result of the conduct of Defendants, and each of them, Plaintiff has suffered and will continue to suffer general damages, including severe emotional distress. Plaintiff sustained great emotional disturbance, shock and injury to his nervous system, all of which caused and continues to cause Plaintiff severe physical and emotional injury, without limitation in an amount to be determined according to proof at trial.

57.     As a result of Defendants' discriminatory conduct as alleged herein, Plaintiff has no plain, adequate or complete remedy at law, and Defendant continues to engage in said wrongful conduct against women.  Therefore, Plaintiff requests that Defendant, including its agents and employees and

///

those acting in concert with them be permanently enjoined from engaging in this alleged wrongful practices set forth herein and be reinstated.

### **PRAYER**

WHEREFORE, plaintiff prays for judgment as hereinafter set forth:

1. After appropriate proceedings, permanently enjoin Defendants from discriminating against older employees or those who made internal complaints of discrimination and retaliation, and reinstatement of Plaintiff;

2. Award Plaintiff compensatory damages, according to proof, for lost wages, medical and psychiatric care expenses and pain and suffering;

3. Punitive damages according to proof

4. Attorneys' fees;

5. Costs of suit;

6. For any other relief that the Court deems just and proper.

Date:   August 26, 2016            LAW OFFICES OF JILL P. TELFER
                                   A Professional Corporation

                                    */s/ Jill P. Telfer*
                                   _____
                                   JILL P. TELFER
                                   Attorney for Plaintiff
                                   **JOHN DUCRAY**